## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SUSAN VELASQUEZ,

        Plaintiff,

      v.                                               Civ. No. 23-1012 DHU/KK

MARTIN O'MALLEY, Commissioner of
Social Security,[1]

        Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[2]

Before the Court is Plaintiff's Opening Brief (Doc. 19) ("Motion"), filed March 11, 2024, in which Plaintiff asks the Court to reverse and remand the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB"). In support, Plaintiff argues that the administrative law judge ("ALJ") who issued the final decision erred when she: (1) found that Plaintiff had a non-severe mental impairment but failed to incorporate any mental limitations in Plaintiff's residual functional capacity assessment or discuss why she did not do so; and, (2) failed to address significantly probative evidence that conflicted with how she classified Plaintiff's past relevant work. (*See id.*)

On June 7, 2024, the Commissioner filed a response to Plaintiff's Motion, and on June 21, 2024, Plaintiff filed a reply. (Docs. 25, 26.) Having meticulously reviewed the entire record and

---

[1] Martin O'Malley was sworn in as the Commissioner of the Social Security Administration on December 20, 2023, and is automatically substituted as a party under 42 U.S.C. § 405(g) and Federal Rule of Civil Procedure 25(d).

[2] By an Order of Reference (Doc. 27) entered on December 9, 2024, United States District Judge David H. Urias referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

the relevant law, being otherwise sufficiently advised, and for the reasons set forth below, I find

that Plaintiff's Motion is well-taken and recommend that it be GRANTED.

## I.   Factual and Procedural History

On March 19, 2019, Plaintiff Susan Velasquez filed for DIB, claiming disability since

December 31, 2018, due to post-knee-replacement complications, anxiety, headaches, and

arthritis. (AR[3] 46-48, 67-68.) Before the alleged onset of her disability, Plaintiff worked as a staff

assistant, director of constituent relations, and constituent liaison for certain state and federal

elected officials. (AR 42-46, 205-09.) Plaintiff's claim for DIB was denied at the initial level on

July 21, 2019, and at the reconsideration level on September 18, 2019. (AR 66, 84.) Plaintiff then

requested a hearing, which ALJ Michelle Lindsay held on October 6, 2020. (AR 33, 116-17.)

On November 9, 2020, the ALJ issued a decision finding that Plaintiff was not disabled

under the relevant sections of the Social Security Act. (AR 16-28.) On February 26, 2021, the

Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final

decision of the Commissioner. (AR 1-4); *see Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir.

2003). Plaintiff sought review of the decision in this Court, which remanded the case because the

ALJ failed to properly consider and discuss Plaintiff's mental impairments at step four of the

disability determination process. (AR 907-21.)

On remand, the ALJ held another hearing on April 13, 2023, at which Plaintiff and a

vocational expert ("VE") testified. (AR 851-70.) At the hearing, Plaintiff's attorney confirmed that

Plaintiff met the criteria for insured status through June 30, 2021, establishing the relevant period

for her DIB claim as December 31, 2018, through June 30, 2021. *See* 42 U.S.C. §§ 416(i), 423(d).

---

[3] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on January 10, 2024. (Doc. 13.)

On July 26, 2023, the ALJ issued a second decision finding that Plaintiff was not disabled at any time after December 31, 2018. (AR 830-43.) Plaintiff now seeks review of this most recent unfavorable decision, which became final on September 25, 2023.[4] (Docs. 1, 19; AR 828); *see* 20 C.F.R. § 404.984.

## II. THE ALJ'S DECISION

On remand, the ALJ reviewed Plaintiff's claim pursuant to the Commissioner's five-step sequential evaluation process ("SEP").[5] (AR 830-43.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. (AR 832.) The ALJ found at step two that Plaintiff suffered from the severe impairments of "osteoarthritis of the bilateral knees status-post bilateral knee replacements, degenerative joint disease of the bilateral hands, and obesity." (AR 833.) Additionally, the ALJ found that Plaintiff had "a medically determinable mental impairment of generalized anxiety disorder [that] did not cause more than minimal limitation in [her] ability to perform basic mental work activities and was therefore non-severe."

---

[4] "[W]hen a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an administrative law judge … the decision of the administrative law judge … become[s] the final decision of the Commissioner … unless the Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984(a). Because the Appeals Council has only sixty days to assume jurisdiction, the ALJ's decision becomes final if the Appeals Council takes no action during that sixty-day period. *See* 20 C.F.R. § 404.984(c), (d).

[5] The Commissioner's five-step SEP requires the ALJ to determine whether:

    (1) the claimant engaged in substantial gainful activity during the alleged period of disability;
    (2) the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
    (3) any such impairment meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
    (4) the claimant can return to her past relevant work; and, if not,
    (5) the claimant is able to perform other work in the national economy, considering her residual functional capacity, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof at the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

(*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 835-36.)

At step four, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative findings, and Plaintiff's reports of her symptoms. (AR 836-42.) Having done so, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC")[6] to

> perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except [she] can lift, carry, push, and pull up to ten pounds on an occasional basis. [Plaintiff] can sit for at least six hours, and stand and/or walk for two hours, in an eight-hour workday. [She] can occasionally climb stairs and ramps, but should never climb ladders, ropes, or scaffolds. [She] can occasionally balance or stoop, but should never crouch, kneel, or crawl. She is limited to frequent, as opposed to constant, handling and fingering. [She] must avoid more than occasional exposure to extreme cold. [She] must avoid all exposure to unprotected heights.

(AR 836.)

The ALJ further determined that Plaintiff's RFC allowed her to perform her past relevant work ("PRW") as generally performed. (AR 843.) In making this determination, the ALJ adopted the VE's classification of Plaintiff's prior jobs as "Secretary" and "Congressional District Aide," both sedentary occupations according to the Dictionary of Occupational Titles ("DOT"). (AR 842-43; *see* AR 868.) The ALJ therefore concluded that Plaintiff was not disabled and did not continue to step five of the SEP. (AR 843); *see* 20 C.F.R. § 404.1520(f).

---

[6] 20 C.F.R. § 404.1545(a)(1) gives the following explanation of a claimant's RFC: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your [RFC] is the most you can still do despite your limitations."

4

### III. STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting

5

[her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

## IV. DISCUSSION

### A. The ALJ committed reversible error by failing to show that she applied correct legal standards in assessing Plaintiff's mental RFC.

Plaintiff first argues that the ALJ erred in assessing her RFC at step four by failing to either (1) incorporate into her RFC one or more functional limitations resulting from the non-severe mental impairment the ALJ found at step two or (2) explain why this impairment did not result in any functional limitations. (Doc. 19 at 3-18.) In response, the Commissioner asserts that the ALJ properly considered Plaintiff's mental impairment in determining her RFC. (Doc. 26 at 6-18.)

#### 1. The ALJ's Discussion of Plaintiff's Mental Impairment

At step two, the ALJ considered Plaintiff's medically determinable impairment of generalized anxiety disorder ("GAD") using the Commissioner's special technique for assessing the severity of mental impairments. The technique involves rating the degree of the claimant's limitations across "four broad functional areas" known as the "paragraph B criteria," *i.e.*: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and, (4) adapting and managing oneself. (AR 833-35); 20 C.F.R. § 404.1520a(b)(2), (c)(1)-(4). Using this technique, an ALJ rates the claimant's limitations in each area as "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 404.1520a(c)(4). A finding that a claimant has no more than mild limitations in each area results in the conclusion that the claimant's mental impairments are not severe. 20 C.F.R. § 404.1520a(d)(1).

6

In this case, the ALJ found that, due to her GAD, Plaintiff had mild limitations in the first

and third broad functional areas, and no limitation in the second and fourth areas. (AR 833-35.)

The ALJ therefore concluded that Plaintiff's mental impairment was not severe. (*Id.*); *see* 20

C.F.R. § 404.1520a(d)(1). In support, the ALJ explained that Plaintiff's

> medical records included a diagnosis of anxiety (Ex. 1F/8; 9F/4; 15F/4). However,
> the medical records do not document treatment during the relevant period for
> anxiety and [Plaintiff] did not complain of or request medication or treatment for
> specific symptoms of anxiety. Further, throughout the record, [her] providers noted
> that her mood, affect, and behavior were normal,[7] and she exhibited normal thought
> content and normal judgment (Ex. 1F/9; 6F/9, 20; 9F/22; 13F/8; 15F/52). In
> addition, her providers reported that she was pleasant and cooperative (Ex. 6F/20;
> 9F/22). Finally, during the consultative examination, examiner, John Owen, PhD,
> noted that [she] reported she is anxious related to her pain, finances, and change in
> lifestyle following knee surgery (Ex. 5F/4). He observed that she was able to
> understand simple questions and instructions, her speech was clear and coherent,
> and she had appropriate affect (Ex. 5F/4). He did not indicate that he observed [her]
> to be anxious.[8] For example, he did not indicate she was fidgeting, restless, unable
> to sit still, had pressured speech, was sweating, or had fast breathing (Ex. 5F).
> [Plaintiff's] allegation that her anxiety prevents her from working is not consistent
> with the totality of the evidence in the record, thus the undersigned finds that her
> anxiety does not cause more than minimal limitation in [her] ability to work.[9]

(AR 834.)

At the consultative examination referenced in this explanation, Dr. Owen found that: (a) in

the area of understanding and remembering, Plaintiff had "mild difficulty" in understanding and

---

[7] However, I note that Occupational Therapist Kristiana Dion indicated that Plaintiff was "anxious" on July 10, 2018, (AR 348), and that Certified Nurse Practitioner Laura Pagan indicated that Plaintiff was "nervous/anxious" on August 19, 2021. (AR 1176.)

[8] However, I note that, in light of Dr. Owen's notation that Plaintiff reported being anxious, his finding that Plaintiff presented with an "appropriate" affect appears to contradict the ALJ's statement that he did not indicate that he observed her to be anxious. (AR 475); *see American Psychological Association Dictionary of Psychology*, https://dictionary.apa.org/appropriate-affect (last accessed Dec. 10, 2024) (defining "appropriate affect" as "an expression of mood or feeling that is in harmony with, or naturally indicative of, the accompanying thought, action, reaction, or verbal expression").

[9] The citations to exhibits in this section can be found in the following locations of the Administrative Record: 1F/8, 9—(AR 284); 5F—(AR 472-77); 6F/9, 20—(AR 486, 497); 9F/4, 22—(AR 721, 739); 13F/8—(AR 1120); and, 15F/4, 52—(AR 1129, 1177.)

remembering "[d]etailed or complex instructions"; and, (b) in the area of sustained concentration and task persistence, Plaintiff had "no to mild difficulty" in attending and concentrating. (AR 476.) The ALJ found Dr. Owen's assessment persuasive because it "found no more than mild difficulties in the claimant's ability to perform in any of the four functional areas." (AR 835.) The ALJ also found persuasive the assessments of state agency psychological consultants Mark Gaughey, Ph.D., and Joan Holloway, Ph.D., both of whom cited to Dr. Owen's findings as well as other record evidence in concluding that Plaintiff's mental impairment was not severe.[10] (AR 834-35; *see* AR 74-76; AR 93-95.) Before concluding her step-two analysis, the ALJ acknowledged that while the "paragraph B criteria" are used to assess mental impairment severity at steps two and three, a more detailed mental RFC analysis is required at steps four and five. (AR 835.)

At step four of the SEP, the ALJ addressed Plaintiff's GAD using language that almost exactly mirrors language she used at step two to explain her finding of non-severity. (*Compare* AR 834 *with* AR 842.) Specifically, she stated:

> *With regard to [Plaintiff's] allegation that her anxiety prevents her from working, the evidence of record is inconsistent with [her] claims. For example,* [her] providers *routinely observed* that her mood, affect, and behavior were normal, and she exhibited normal thought content and normal judgment (Ex. 1F/9; 6F/9, 20; 9F/22; 13F/8; 15F/52). In addition, her providers reported that she was pleasant and cooperative (Ex. 6F/20; 9F/22). *Further*, the *consultative examiner, Dr. Owen* noted that [she] reported she is anxious related to her pain, finances, and change in lifestyle following knee surgery (Ex. 5F/4). *However*, he observed that she was able to understand simple questions and instructions, her speech was clear and coherent, and she had appropriate affect (Ex. 5F/4). He did not indicate that he observed [her] to be anxious. For example, he did not indicate she was fidgeting, restless, unable to sit still, had pressured speech, was sweating, or had fast breathing (Ex. 5F). *Overall*, [her] allegation that her anxiety prevents her from working is not consistent with the totality of the evidence in the record, thus the undersigned finds

---

[10] Drs. McGaughey and Holloway both found that Plaintiff has mild limitations in the broad functional areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (AR 75, 94.)

that her anxiety does not cause more than minimal limitation in [her] ability to work, *and her anxiety is therefore, non-severe.*

(AR 842 (emphases added to indicate where this language departs from the language used in the ALJ's step-two analysis).)

2.  Legal Standards and Analysis

Although a claimant must have at least one severe impairment or combination of impairments for the SEP to proceed past step two, 20 C.F.R. § 404.1520(a)(4)(ii), an ALJ must consider all of the claimant's medically determinable impairments, including ones that are not severe, in formulating the claimant's RFC at step four. 20 C.F.R. § 404.1545(a)(2).

> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184, at *5 (Jul. 2, 1996).

Importantly, the criteria used to assess the severity of a mental impairment at step two of the SEP are "not an RFC assessment," and

> [t]he mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96–8p, 1996 WL 374184, at *4. There are twenty specific work-related mental functions to

be considered in formulating a mental RFC.[11] POMS DI § 24510.060(B)(2)(b).[12] A mental RFC should identify the broad area(s) of mental functioning at issue, and then discuss the specific work-related "functions that the individual has demonstrated that [she] can do, as well as any limitations of those functions." POMS DI § 24510.065(B)(1). In particular, a mental RFC should, among other things, "[i]ndicate the extent to which the individual could be expected to perform and sustain the activity" in question. *Id.*

In accordance with the foregoing administrative authority, the Tenth Circuit has held that, when an ALJ finds one or more mild restrictions in a claimant's four broad areas of mental functioning due to a non-severe mental impairment at step two, she must further analyze the impairment's work-related impact, if any, in formulating the claimant's RFC at step four. *Wells v. Colvin*, 727 F.3d 1061, 1064-65, 1068-69 (10th Cir. 2013); *see also McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (holding that ALJ's RFC determination was "defective" because, among other things, ALJ "made no findings on what, if any, work-related limitations resulted from

---

[11] The twenty work-related mental functions to be considered in assessing a mental RFC are: (a) in the area of understanding and memory, the abilities to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; and, (3) understand and remember detailed instructions; (b) in the area of sustained concentration and persistence, the abilities to: (4) carry out very short and simple instructions; (5) carry out detailed instructions; (6) maintain attention and concentration for extended periods; (7) perform activities within a schedule, maintain regular attendance, and be punctual; (8) sustain an ordinary routine without special supervision; (9) work in coordination with or proximity to others without being distracted by them; (10) make simple work-related decisions; and, (11) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (c) in the area of social interaction, the abilities to: (12) interact appropriately with the general public; (13) ask simple questions or request assistance; (14) accept instructions and respond appropriately to criticism from supervisors; (15) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, (16) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and, (d) in the area of adaptation, the abilities to: (17) respond appropriately to changes in the work setting; (18) be aware of normal hazards and take appropriate precautions; (19) travel in unfamiliar places or use public transportation; and, (20) set realistic goals or make plans independently. POMS DI § 24510.060(B)(2)(b); Form SSA-4734-F4-SUP.

[12] The POMS "is a set of policies issued by the [Social Security Administration] to be used in processing claims." *Ramey v. Reinertson*, 268 F.3d 955, 964 (10th Cir. 2001) (quotation marks omitted). The Court must "defer to the POMS provisions unless [it] determine[s] they are arbitrary, capricious, or contrary to law." *Id.* at 964 n.2 (quotation marks omitted).

[the claimant's non-severe mental impairments]"). In so holding, the *Wells* court relied on the Commissioner's regulations and rulings that: (1) an "ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*," in assessing the claimant's RFC; (2) an ALJ may not "simply rely on his finding of non-severity" at step two "as a substitute for a proper RFC analysis" at step four; and, (3) "most importantly," the ALJ's step-four RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." *Id.* at 1064-65 (emphasis in original) (quotation marks and ellipses omitted).

Here, the ALJ did not adequately address Plaintiff's non-severe medically determinable mental impairment of GAD in her step-four analysis. Contrary to agency guidelines, the ALJ did not, in her discussion of Plaintiff's RFC, acknowledge Plaintiff's mild limitations in the broad functional areas of "understanding, remembering, or applying information" and "concentrating, persisting, or maintaining pace." *See* SSR 96–8p, 1996 WL 374184, at *4; POMS DI § 24510.065(B)(1)(a); (AR 842.) Additionally, the ALJ did not follow agency guidelines by discussing which specific work-related mental functions Plaintiff can do, any limitations of those functions, and the extent to which she could be expected to perform and sustain the activities in question. *See* SSR 96–8p, 1996 WL 374184, at *4; POMS DI § 24510.065(B)(1)(a); Form SSA-4734-F4-SUP; (AR 842.) Indeed, the ALJ did not even mention Dr. Owen's findings regarding Plaintiff's ability to perform specific work-related mental functions. (AR 842; *see* AR 476.)

Nor did the ALJ remedy these step-four deficiencies elsewhere in her decision. The ALJ did, at step two, discuss evidence relevant to the broad functional areas in which she found Plaintiff to be mildly limited. (AR 833-34.) For example, the ALJ noted that: (1) in an Adult Function Report, Plaintiff indicated she had no problem following instructions or paying attention and could

finish what she started; but, (2) at a hearing before the ALJ, Plaintiff testified that, at her previous job, "she experienced memory issues," was able to "focus" but "required more time to complete her tasks,"[13] and "had to take breaks and lie down in a dark room … due to anxiety attacks." (AR 833-34 (citing AR 223); *see* AR 51-52.) However, the ALJ did not discuss whether or why she accepted or rejected any of this evidence in whole or in part, nor, critically, did she indicate whether or how she considered it to assess the specific work-related mental "functions that [Plaintiff] has demonstrated that [she] can do, as well as any limitations of those functions." POMS DI § 24510.065(B)(1). Likewise, the ALJ acknowledged that Dr. Owen found "no more than mild difficulties in [Plaintiff's] ability to perform in any of the four [broad] functional areas," but did not address his findings regarding specific work-related mental functions and limitations. (AR 835; *see* AR 476.)

Moreover, the ALJ's discussion of Plaintiff's mental impairment at step four strongly suggests that she improperly equated her step-two non-severity determination with the absence of any specific work-related mental limitations. (*See* AR 842.) To start, the ALJ's discussion of Plaintiff's mental impairment at step four almost exactly mirrors language she used at step two in finding that the impairment is not severe. (*Compare* AR 834 *with* AR 842.) This duplicative reasoning suggests that the ALJ did not separately analyze how, if at all, Plaintiff's non-severe mental impairment impacted her ability to perform specific work-related mental functions. Instead, it appears that the ALJ's failure to include any mental limitations in Plaintiff's RFC was improperly based solely on her step-two finding of non-severity. (*See* AR 842); SSR 96-8p, 1996

---

[13] Specifically, Plaintiff testified that, due to her mental impairment, "it just took more time than needed" for her to complete her job tasks. (AR 52.) She also testified that, due to her physical impairments, she "struggle[ed] … to get things to [her employer] in a timely manner." (AR 51.)

WL 374184, at *4 (stating that ALJ must engage in separate analyses of a claimant's mental impairments at steps two and four of the SEP).

Further, the ALJ concluded her step-four discussion of Plaintiff's mental impairment by stating that Plaintiff's "anxiety does not cause more than minimal limitation in [her] ability to work, and her anxiety is therefore, non-severe." (AR 842.) Like the ALJ's nearly-verbatim repetition of her step-two reasoning at step four, this statement strongly suggests that the ALJ improperly relied on her step-two finding of non-severity to exclude any work-related mental limitations from Plaintiff's RFC at step four. *See Wells*, 727 F.3d at 1069. At a minimum, the ALJ's duplicative reasoning and express reference to non-severity at step four make it impossible for the Court to discern whether the ALJ actually conducted a proper assessment of Plaintiff's mental RFC by considering the specific work-related mental functions she can do and any limitations of those functions. I therefore recommend that the Court remand this matter to the Commissioner for further proceedings to resolve this ambiguity. *See Jensen*, 436 F.3d at 1165.

In sum, Tenth Circuit law and agency rules and regulations require ALJs to consider the combined effects of a claimant's severe and non-severe impairments in assessing the claimant's RFC at step four, because limitations from a non-severe impairment, in combination with limitations from other impairments, may prevent the claimant from performing past relevant work or narrow the range of other work the claimant may still be able to do. *Wells*, 727 F.3d at 1064-65, 1068-69; 20 C.F.R. § 404.1545(a)(2); SSR 96–8p, 1996 WL 374184, at *4. Thus, when an ALJ finds mild mental limitations at step two, she must further analyze at step four how, if at all, the claimant's non-severe mental impairment impacts her ability to perform specific work-related mental functions. *Wells*, 727 F.3d at 1064-65, 1068-69. A step-two analysis limited to severity does not satisfy this obligation. *Id.* Because the ALJ has failed to provide the Court with a sufficient

basis to determine that she correctly applied these legal standards, I recommend that the Court

remand this matter to the Commissioner for further proceedings.[14] *See Jensen*, 436 F.3d at 1165.

**B. The ALJ committed reversible error by failing to discuss significantly probative evidence that conflicts with her classification of Plaintiff's past relevant work.**

    1.   The ALJ's Discussion of Plaintiff's Past Relevant Work

At step four, after assessing Plaintiff's RFC, the ALJ considered whether Plaintiff could

return to her past relevant work ("PRW"). (AR 842-43; *see* AR 836.) The ALJ first adopted the

VE's testimony that Plaintiff's PRW as defined in the DOT was as a "Secretary" and

"Congressional District Aide," both sedentary occupations. (AR 842; *see* AR 868.) After noting

the VE's testimony that a hypothetical person with Plaintiff's assessed RFC would be able to

perform these occupations, the ALJ concluded that "the demands of [Plaintiff's PRW] as a

secretary and as a congressional district aide[] did not exceed [Plaintiff's RFC]" and thus that

Plaintiff was not disabled during the relevant period. (AR 843 (citing 20 C.F.R. § 404.1520(f)).)

Plaintiff argues that the ALJ's classifications of her PRW are not based on substantial

evidence because the ALJ failed to address two evidentiary items in the record that conflict with

those classifications. (Doc. 19 at 18-19.) Specifically, first, in its Disability Determination

Explanations at the initial and reconsideration levels, the state agency classified Plaintiff's PRW

as that of an "Association Executive," which, according to the DOT, is a light rather than sedentary

---

[14] The Commissioner does not argue that the ALJ's error in this regard was harmless. (*See generally* Doc. 25.) Further, in its prior order remanding this case to the Commissioner, the Court explained why the ALJ's initial failure to properly assess Plaintiff's mental RFC was not harmless, and the Court's explanation is equally applicable to the ALJ's most recent failure. (AR 914-15.) In particular, the Court noted that "[a] reasonable factfinder could credit Dr. Owen's opinion and determine that Plaintiff is limited to some degree in the ability to understand and remember detailed or complex instructions and should not be assigned to work"—such as her past relevant work—"in which this skill is crucial." (AR 915.)

occupation.[15] (AR 81, 100.) Second, in a Work History Report, Plaintiff indicated that her past

jobs as a staff assistant, director of constituent relations, and constituent liaison required her to lift

ten pounds frequently and twenty pounds occasionally, which is likewise consistent with light

rather than sedentary work.[16] (AR 205-09.)

    2.  <u>Legal Standards and Analysis</u>

An ALJ's step-four analysis involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023

(10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine the

claimant's RFC. 20 C.F.R. § 404.1545(a)(1). Second, the ALJ must determine the physical and

mental demands of the claimant's PRW. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine

whether the claimant is capable of meeting those demands given her RFC. *Id.* A claimant who can

perform her PRW is not disabled. 20 C.F.R. § 404.1520(f).

Here, Plaintiff's challenge is to the ALJ's step-four, phase-two finding that Plaintiff's PRW

falls into two sedentary job categories in the DOT. (*See* AR 868.) An "ALJ may rely on the

[DOT]'s job description for [a] claimant's job category as presumptively applicable to a claimant's

prior work." *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993)

(citing 20 C.F.R. § 404.1566(d)(1) (quotation marks omitted)). "However, a claimant may

overcome the presumption that the [DOT] entry for a given job title applies to [her] by

demonstrating that the duties in [her] particular line of work were not those envisaged by the

---

[15] At times, the state agency indicated that the job classification of "Association Executive" is found under DOT Code 187.117-010. (AR 81, 100.) In fact, as the agency indicated at other times, it is found under DOT Code 189.117-010. (AR 74, 93, 81, 100); *see* U.S. Dep't of Labor, Office of Administrative Law Judges Law Library, DOT, *Alphabetical Index of Occupational Titles*, https://oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTALPHA.HTM (last accessed Dec. 10, 2024).

[16] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," while "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(a), (b).

drafters of the category." *Id.* at 1051-52 (quotation marks omitted). It is the "[c]laimant's burden … to demonstrate [she] cannot return to [her] former type of work, and not just to [her] previous job." *Id.* at 1052. To do so, the "claimant must show that the duties of [her] prior job were sufficiently distinct from the duties of [an identified job category] as described in the [DOT] to constitute a different line of work." *Id.*

An ALJ, in turn, "need not discuss all of the evidence in the record," but she "may not ignore evidence that does not support [her] decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton*, 79 F.3d at 1009-10). "[E]vidence is anything [a claimant] or anyone else submits to [the agency] or that [the agency] obtains that relates to [a claimant's] claim." 20 C.F.R. § 404.1513(a). In general, a claimant's own statements regarding the demands of her PRW are significantly probative evidence of those demands. *See* SSR 82-62, 1982 WL 31386, at *3 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands[,] and nonexertional demands of such work."[17]); *Bobbie E. N. v. Kijakazi*, 2022 WL 873613, at *3 (N.D. Okla. Mar. 23, 2022) ("Plaintiff's testimony constitutes significantly probative evidence regarding how he actually performed his [PRW].") (emphasis omitted).

In this case, the ALJ failed to provide the Court with a sufficient basis to determine whether she applied correct legal standards in classifying Plaintiff's PRW, because she did not discuss the significantly probative contradictory evidence Plaintiff has identified. Initially, the state agency's classification of Plaintiff's PRW as "Association Executive," an occupation imposing light

---

[17] The DOT, in turn, is a source of "supplementary or corroborative information … on the requirements of the work as generally performed in the economy" that may need to be considered "in some cases." SSR 82-62, 1982 WL 31386, at *3.

exertional demands, plainly contradicts the ALJ's conclusion that her PRW was sedentary. (*See* AR 81, 100.) Likewise, Plaintiff's Work History Report indicates that her former jobs imposed greater lifting demands than do sedentary occupations like "Secretary" and "Congressional District Aide." (*See* AR 42, 49, 206-09, 842.) In short, there was significantly probative evidence in the record indicating that "the duties of [Plaintiff's] prior job[s] were sufficiently distinct from the duties" in the DOT classifications the ALJ adopted and that the prior jobs fell into a different classification with light rather than sedentary exertional requirements. *Andrade*, 985 F.2d at 1051; *see* SSR 82-62, 1982 WL 31386; *Bobbie E. N.*, 2022 WL 873613, at *3. Yet, the ALJ never discussed this evidence in her decision. (*See generally* AR 830-43.)

Of course, there may be other substantial evidence in the record on which the ALJ could have relied to reject this significantly probative contradictory evidence and conclude that Plaintiff's PRW nevertheless fell under the DOT classifications she adopted. *See Andrade*, 985 F.2d at 1052. Clearly, however, the ALJ was not permitted to ignore the contradictory evidence entirely. *See Briggs*, 248 F.3d at 1239; *Clifton*, 79 F.3d at 1009–10. The ALJ therefore erred by failing to at least discuss this evidence at phase two of her step-four analysis, or indeed, anywhere in her decision. *See Winfrey*, 92 F.3d at 102; *Jensen*, 436 F.3d at 1165.

The Commissioner makes several unavailing arguments as to why the ALJ's classification of Plaintiff's PRW was proper notwithstanding her failure to address significantly probative contradictory evidence in the record. First, the Commissioner cites *Garcia v. Commissioner*, 817 F. App'x 640 (10th Cir. 2020), and *Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009), to support his argument that Plaintiff's counsel should have raised the issue of PRW classification at the most recent hearing before the ALJ. (Doc. 25 at 20; *see* AR 853-70.) However, both of these cases address issues distinct from the one Plaintiff raises in her Motion.

In *Garcia*, a claimant argued that the administrative record in that case was "inadequate regarding the location and geographical concentration of the occupations" that the ALJ found existed in significant numbers in the national economy at step five. *Garcia*, 817 F. App'x at 644, 649. The Tenth Circuit stated that, to the extent the claimant believed the record was inadequate regarding these issues, his counsel "could have asked [the VE] additional questions at the hearing to clarify [them]." *Id.* at 649.

Similarly, in *Wall*, the claimant argued that the ALJ erred by failing to develop the administrative record regarding her cognitive and psychological disorders, even though she never alleged that she suffered from a severe mental disability and, at her administrative hearing, merely stated that she had "memory loss." *Wall*, 561 F.3d at 1062. The Tenth Circuit noted that, while an ALJ has a duty to ensure an adequately developed record, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists" and that an "ALJ may reasonably rely on counsel to identify" an impairment requiring further development. *Id.* at 1063. Thus, these decisions focus on counsel's responsibility to develop the administrative record, or at least to identify how the record should be further developed. They do not address circumstances like those presented here, where the record already includes significantly probative vocational evidence that conflicts with the ALJ's findings.

Next, citing *Andrade*, the Commissioner argues that any evidence regarding how Plaintiff *actually* performed her PRW is irrelevant because the ALJ found that she could meet the demands of the "Secretary" and "Congressional District Aide" occupations as they are *generally* performed. (Doc. 25 at 20-21.) But this argument also misses the mark. In *Andrade*, the Tenth Circuit upheld the ALJ's finding that the claimant could perform his PRW even though he presented evidence that his prior job duties exceeded those of the DOT listing for "general contractor," because he did

not show that his duties "were sufficiently distinct from the duties of a general contractor as described in the [DOT] to constitute a different line of work." *Andrade*, 985 F.2d at 1050-52 (brackets omitted).

In this case, however, Plaintiff points to significantly probative record evidence that her PRW fell under the light-work DOT classification the state agency used rather than the sedentary-work classifications the ALJ adopted. (Doc. 19 at 18-19.) In other words, she points to evidence that "the duties of [her] prior job[s] were sufficiently distinct from the duties of a [Secretary and Congressional District Aide] as described in the [DOT] to constitute a different line of work." *Andrade*, 985 F.2d at 1052. Thus, *Andrade* is distinguishable on its facts, and the general principles stated therein support Plaintiff's argument that the ALJ erred in failing to consider this evidence.

Finally, without citing any authority, the Commissioner argues that the ALJ's unfavorable decision should stand because, even if Plaintiff's PRW required more exertion than her RFC allowed, the state agency at the initial and reconsideration levels found that Plaintiff could perform other skilled, sedentary work existing in significant numbers in the national economy. (Doc. 25 at 21-22; *see* AR 81-82, 100-01.) But there are two problems with this argument. First, it is an improper post-hoc rationalization. "[T]his [C]ourt may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). And here, the ALJ manifestly did not consider whether Plaintiff could perform other work in the national economy, because she found that Plaintiff was not disabled at step four and chose not to proceed to step five as an alternative basis for her decision. (AR 842-43.)

Second, to the extent the Commissioner means to argue that any error in the ALJ's step-four discussion of Plaintiff's PRW was harmless because the state agency's determinations show

that Plaintiff would have inevitably lost at step five, I disagree. The RFC the ALJ assessed was in some respects more restrictive than the RFC the state agency assessed, so it cannot be presumed that the ALJ would have reached the same conclusion as the state agency had she proceeded to step five. (*Compare* AR 78-81 *and* AR 96-99 *with* AR 836.) Moreover, for the reasons discussed in Section IV.A., *supra*, the ALJ could decide to assess a more restrictive mental RFC on remand, which would further erode any other lines of work an individual with Plaintiff's RFC would be able to perform. In short, the ALJ's error was not harmless, because the state agency's step-five determinations do not allow the Court to "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). I therefore recommend that the Court remand this matter to the Commissioner for further proceedings to consider the significantly probative record evidence that conflicts with the ALJ's classification of Plaintiff's PRW.

## V. CONCLUSION

Having conducted a thorough review of the Administrative Record, I conclude that the ALJ committed reversible error in her most recent decision rejecting Plaintiff's claim for DIB by failing to: (1) demonstrate that she applied correct legal standards in assessing Plaintiff's mental RFC; and, (2) discuss significantly probative contradictory evidence regarding the classification of Plaintiff's PRW. Accordingly, I recommend that Plaintiff's Motion (Doc. 19) be GRANTED, and that the Commissioner's decision denying Plaintiff's disability claim be REVERSED and this matter REMANDED to the Commissioner for further proceedings in accordance with these Proposed Findings and Recommended Disposition.

**Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(C), file written objections to such**

proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE